

*[Handwritten notations: "Treat as motion to be submitted on 9 June 15. Tell parties. So ordered. [signature] USDJ 5-25-11"]*

**Loss Prevention Specialists, Inc.**
3325 140th Ave. NW • Andover, MN 55304
(763) 572-1234 • FAX (763) [illegible]

05/19/2011

Honorable Judge Robert W. Sweet
US District Judge—Southern District of New York
500 Pearl Street, Room 1920
New York, NY 10007

*[Received stamp: MAY 20 2011 JUDGE SWEET CHAMBERS; additional stamp 5/25/11]*

Re: NASDAQ Market-Makers Antitrust Litigation (94-3996)

Dear Honorable Judge Sweet:

Upon the advice of counsel, we are contacting your office directly in regard to the case referenced above. Loss Prevention Specialists, Inc. (LPS) has endeavored for some time to bring to the attention of the party or parties with authority to act in this matter. Information has only recently come to our attention that your Court has reserved jurisdiction over the NASDAQ Settlement Fund.

LPS is a Minnesota licensed, private detective agency providing a diverse variety of services for our clients. Our asset recovery division investigates information provided by various financial sources related to dormant assets. This division initially researches account and ownership information, and then attempts to locate the owner or owners of the identified asset in order to facilitate a recovery from the controlling fiduciary by the rightful owner or owners. Subsequent steps toward recovery are performed after our services have been engaged. LPS performs these services on a contingent basis, and in the normal course of business, is subsequently paid by the owner or owners after they receive payment from the controlling agency.

The purpose of this letter is to report to the Court, that LPS has identified a substantial asset which we believe to be the property of the "NASDAQ Settlement Fund". LPS discovered the existence of these funds in 2007 from an old report file dating to 2004. This asset is reported to be in cash with a value of approximately $1,120,000.00. According to our findings thus far, the asset appears to have been originally acquired through one or more proofs of claim from the "Settlement Fund" for the purpose of distributing to class members and beneficiaries so injured by the Defendants in the NASDAQ case. Preliminary information indicates that the entity responsible for acquiring these monies and its distribution, which we will call Fiduciary 1, appears to have been subsequently acquired in 1997 and operated by another entity, which we will call Fiduciary 2. Fiduciary 2 operated as such until 2003 when the securities unit of Fiduciary 2 was subsequently sold to a foreign financial entity in 2006. Fiduciary 1 still exists today, in name only, as part of that foreign financial entity, but is no longer associated in any way with Fiduciary 2. LPS assumes full oversight of the identified asset was transferred from Fiduciary 1 to Fiduciary 2 upon its acquisition.

LPS further assumes that the approximate $1.12M represents residual monies subsequent to the attempts of Fiduciary 1 to distribute to its class members and beneficiaries, but that Fiduciary 1 was unable to accomplish for various reasons—likely due to client attrition or death of same—and prior to the sale of Fiduciary 1 to Fiduciary 2. It appears that subsequent to Fiduciary 2's sale of the Fiduciary 1 entity, additional efforts by Fiduciary 2 to locate and contact class members and beneficiaries were exhausted and ultimately abandoned. In 2004, after the sale of Fiduciary 1, and its own efforts to distribute the monies had been exhausted, Fiduciary 2 remitted the monies into the custody of what we shall now call, Fiduciary 3. The monies appear to remain in the custody of Fiduciary 3 as of this date, with no apparent ability or obligation on the part of Fiduciary 3 to locate class members or beneficiaries.

At this point, LPS is unable to determine whether or not Fiduciary 3 even possesses backup information relative to class members and beneficiaries, but based upon previous experience, it is extremely unlikely that Fiduciary 2 transferred that type and volume of information, in conjunction with the transfer of monies to Fiduciary 3. Given our experience, it is very unlikely that any attempt has been made by Fiduciary 3 to locate or contact class members or beneficiaries. Our information indicates that the responsibility of Fiduciary 3 was only to attempt delivery of notification to any last known address associated with the account; we have not identified any specific address associated with the account. Beyond this effort, no additional attempts have been made to locate the presumed owner or owners of these monies.

Since discovered in 2007, LPS has endeavored to determine what entity or group would have authority to act on behalf of the members of the class, and/or beneficiaries. Over this time, LPS has attempted to find a solution to this matter through several offices of the Plaintiff's Co-Lead Counsel; more specifically through the offices of Fine, Kaplan and Black, contacting Mr. Allen Black, Lovell Stewart Halebian, contacting Mr. Christopher Lovell, and most recently Milberg, LLP, speaking to Mr. George Bauer III. Mr. Bauer recently suggested that LPS instruct the controlling fiduciary to return the funds in the form of a check, payable to the "Settlement Fund", to his attention, and he would request instructions from the Court, with regard to the proper disposition of the funds, and to any motion for fees on behalf of LPS.

However, LPS possesses no authority under which we are or would be able to request, much less secure the release of monies on behalf of the "Settlement Fund", the Court, or any such person or entity. Conversely, LPS does possess a certain working knowledge of the claims process and familiarity with the required documentation to navigate the recovery once legal authority has been granted, and the location has been identified—a working knowledge which we believe will enable a release of the monies from the controlling fiduciary on behalf of the Court, or the Court's appointee. Our counsel has pointed out that, just as we have no authority to request or secure a release of the monies from the controlling fiduciary, LPS, technically speaking, does not have "status" in the eyes of the Court. This lack of status has posed some degree of complexity to our efforts to bring this matter forward since it has been by our diligent efforts that these monies have been uncovered. It is the full intent of LPS, as demonstrated by the reporting of this matter to the Court that we seek the Court's approval and direction to engage in recovery efforts on behalf of those that are rightfully due the monies.

Therefore, if it pleases the Court, LPS respectfully requests the court to consider a fair contingent fee of fifteen percent (15%) of the actual amount recovered by the court or court's appointee, on behalf of the "Nasdaq Settlement Fund". This fee reflects fair compensation for the investigative work and subsequent assistance that will facilitate a recovery of the identified monies. Furthermore, LPS bases this request upon such facts that, without diligent intervention and persistent efforts by LPS, the funds would continue and will remain indefinitely under the non-use and control of Fiduciary 3, rather than be distributed as ordered by the Court.

Sincerely,

Dennis C. Pruszinske, ARS
Executive Account Manager